**CASE NO. 22-40219**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

---

**TERRY GENTRY**, Individually and, on behalf of All Others Similarly Situated,

Plaintiff – Appellee,

v.

**HAMILTON-RYKER IT SOLUTIONS, LLC**

Defendant – Appellant.

---

On Appeal from the United States District Court
for the Southern District of Texas
Civil Case No. 3:19-cv-00320

---

### REPLY BRIEF OF DEFENDANT – APPELLANT
### HAMILTON-RYKER IT SOLUTIONS, LLC

---

**Ashlee Cassman Grant**
Texas Bar No. 24082791
Federal ID No. 1607786
**Paul M. Knettel**
Texas Bar No. 24102031
Federal ID No. 3005240
**BAKER & HOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas  77002
Telephone:  (713) 751-1600
Facsimile:  (713) 751-1717
agrant@bakerlaw.com
pknettel@bakerlaw.com

ATTORNEYS FOR DEFENDANT – APPELLANT

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................3

I.     PLAINTIFFS' COMPENSATION SATISFIED §602(A)'S
SALARY BASIS TEST. ......................................................3

     A.    *Hewitt* Confirms §602(a)'s Salary Basis Test is Satisfied
When an Employee Received Compensation In Addition to
a Guaranteed Salary. ....................................................3

     B.    Plaintiffs' Extra Hourly Pay Fell under §604(a), Not
§604(b). ..........................................................................9

II.    THE SALARY BASIS TEST IS INVALID ........................12

     A.    This Court Should Consider The Validity of the Salary
Basis Test. ...................................................................13

     B.    The "Salary Basis" Requirements Exceed the DOL's
Authority to Define and Delimit the White-Collar
Exemptions. .................................................................16

           1.    The FLSA Unambiguously Requires the White-
Collar Exemptions Turn on Job Duties, Not Pay. ..........17

           2.    DOL's Interpretation of the White-Collar Exemptions
is Unreasonable. ..............................................................20

     C.    The Reasonable Relationship Test is Even More Divorced
from the FLSA's Text and, Therefore, Invalid. .........23

III.    THE DISTRICT COURT SHOULD BE DIRECTED TO
EXAMINE HR-IT'S GOOD FAITH EVIDENCE ............24

Conclusion .....................................................................................26

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*AG Acceptance Corp. v. Veigel*,
    564 F.3d 695 (5th Cir. 2009) ...........................................................................14

*Anani v. CVS RX Services, Inc.*,
    730 F.3d 146 (2d Cir. 2013) ...............................................................................7

*Atl. Mut. Ins. Co. v. Truck Ins. Exch.*,
    797 F.2d 1288 (5th Cir. 1986) .........................................................................13

*Auer v. Robbins*,
    519 U.S. 452 (1997).....................................................................................22, 24

*Bellum v. PCE Constructors, Inc.*,
    407 F.3d 734 (5th Cir. 2005) ...........................................................................21

*Bernal v. Bexar County*,
    757 F. App'x 316 (5th Cir. 2018) ....................................................................14

*Bio-Med. Applications of Aquadilla, Inc. v. United States*,
    119 Fed. Cl. 546 (2014) ...................................................................................22

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988).........................................................................................10

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023), *petition for certiorari filed* (U.S. April 7,
    2023) .................................................................................................................16

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
    44 F.3d 256 (5th Cir. 1995) .............................................................................25

*CEATS, Inc. v. TicketNetwork, Inc.*,
    No. 21-40705, 2023 WL 4056493 (5th Cir. June 19, 2023) ............................25

*Chen v. Major League Baseball Properties, Inc.*,
    798 F.3d 72 (2d Cir. 2015) ..............................................................................19

*Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)...................................................................................16, 17

*Davis v. Fernandez*,
  798 F.3d 290 (5th Cir. 2015) ....................................................................25, 26

*Encino Motorcars, LLC v. Navarro*,
  138 S. Ct. 1134 (2018)...................................................................................18

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016)........................................................................................21

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)...................................................................................20

*Essinger v. Liberty Mut. Fire Ins. Co.*,
  534 F.3d 450 (5th Cir. 2008) ........................................................................13

*Freeman v. Cnty. of Bexar*,
  142 F.3d 848 (5th Cir. 1998) ........................................................................25

*Glass v. Paxton*,
  900 F.3d 233 (5th Cir. 2018) ........................................................................13

*Gregory v. Missouri Pac. R. Co.*,
  32 F.3d 160 (5th Cir. 1994) ..........................................................................12

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*,
  968 F.3d 454 (5th Cir. 2020), *as revised* (Aug. 4, 2020) ............................16, 21

*Hebert v. FMC Techs., Inc.*,
  No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023) ......................*passim*

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
  143 S. Ct. 677 (2023)....................................................................................*passim*

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
  15 F.4th 289 (5th Cir. 2021) (*en banc*).......................................................*passim*

*Hughes v. Gulf Interstate Field Servs. Inc.*,
  878 F.3d 183 (6th Cir. 2017) ..........................................................................6

iv

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)......................................................................21

*Litz v. Saint Consulting Grp., Inc.*,
    772 F.3d 1 (1st Cir. 2014)............................................................7

*In re Lloyd's Register N. Am., Inc.*,
    780 F.3d 283 (5th Cir. 2015)......................................................25

*Loper Bright Enters., Inc. v. Raimondo*,
    45 F.4th 359 (D.C. Cir. 2022), *cert. granted*, 2023 WL 3158352 (2023)..........16

*Mayfield v. U.S. Department of Labor*,
    No. 1:22-cv-792-RP (W.D. Tex.) ............................................15, 16

*Meza v. Intelligent Mexican Mktg., Inc.*,
    720 F.3d 577 (5th Cir. 2013) ......................................................19

*Nevada v. United States Dep't of Lab.*,
    275 F. Supp. 3d 795 (E.D. Tex. 2017)................................17, 18, 20

*Pub. Emps. Ret. Sys. of Ohio v. Betts*,
    492 U.S. 158 (1989)..............................................................15, 22

*Sw. Elec. Power Co. v. United States Env't Prot. Agency*,
    920 F.3d 999 (5th Cir. 2019) ......................................................17

*United States v. Smith*,
    39 F.2d 851 (1st Cir. 1930)........................................................22

*Vaughn v. Wingo Serv. Co., Inc.*,
    No. 4:20-CV-3915, 2022 WL 4280665 (S.D. Tex. Aug. 4, 2022)......................6

*W. Virginia v. Env't Prot. Agency*,
    142 S. Ct. 2587 (2022)..............................................................21

*Willis v. Koning Assocs.*,
    No. 21-CV-00819-BLF, 2023 WL 3569998 (N.D. Cal. May 19, 2023).............6

*Wirtz v. Mississippi Publishers Corp.*,
    364 F.2d 603 (5th Cir. 1966) ................................................22, 24

## **Statutes**

5 U.S.C. § 706 ................................................................................16

29 U.S.C. § 207 ...............................................................................11

29 U.S.C. § 213 ........................................................................*passim*

93 Stat. 920 ....................................................................................22

## **Rules**

29 C.F.R. § 541.101 .........................................................................20

29 C.F.R. § 541.304 .........................................................................20

29 C.F.R. § 541.601 .....................................................................23, 24

29 C.F.R. § 541.602 ...................................................................*passim*

29 C.F.R. § 541.604(a) ...............................................................*passim*

29 C.F.R. § 541.604(b) ...............................................................*passim*

29 C.F.R. § 541.709 .........................................................................20

29 C.F.R. § 541.710 .........................................................................20

29 C.F.R. § 778.101 .........................................................................19

29 C.F.R. § 778.105 .........................................................................11

57 Fed. Reg. 37666 (Aug. 19, 1992).................................................20

69 Fed. Reg. 22122 (April 23, 2004) ...........................................12, 24

84 Fed. Reg. 51230 (Sept. 27, 2019) ...........................................18, 23

## **Other Authorities**

Black's Law Dictionary (11th ed. 2019)…………………………………11

Miriam-Webster Dictionary………………………………………………11

## INTRODUCTION

This is <u>not</u> a day-rate case. Plaintiffs undisputedly received <u>weekly</u> guaranteed salaries of $984 and $1,200, respectively. These salaries were predetermined, guaranteed to Plaintiffs in advance and in writing, and paid each week they performed <u>any</u> work for HR-IT, whether they worked 1 minute or 100 hours. Thus, contrary to Plaintiffs' claim, this pay practice is <u>not</u> "functionally the same as that posed" in *Helix Energy Sols. Grp., Inc. v. Hewitt*, 143 S. Ct. 677 (2023) ("*Hewitt*). (Plaintiff-Appellee Brief ("Gentry Br.") at 23, n.6).[1] Rather, HR-IT provided precisely what the Department of Labor's ("DOL") regulations and *Hewitt* explain constitutes a salary: "a steady and predictable stream of pay, week after week after week." *Hewitt*, 143 S. Ct. at 688; *see also* 29 C.F.R. § 541.602(a).

Yet, Plaintiffs and the DOL[2] urge this Court find Plaintiffs were not paid on a salary basis <u>solely</u> because Plaintiffs received hourly pay on top of their weekly salaries. This absurd result does not comport with the plain language of §602(a) or *Hewitt* which unequivocally provide that §602(a) is met where—as here—an employee receives "at least part of" his pay in the form a "preset weekly (or less frequent) salary." *Hewitt*, 143 S. Ct. at 683. Moreover, Plaintiffs' position completely ignores *Hewitt*'s affirmation that §602(a)'s "'all or part' reference …

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in HR-IT's Opening Brief ("HR-IT Br.").

[2] The Acting Secretary of Labor filed a Brief as Amicus Curiae in Support of Plaintiff-Appellee and Affirmance of the District Court's Decision, Doc. 62-1 ("DOL Br.").

1

makes clear that a worker can be paid on a salary basis even if he additionally gets non-salary compensation, like a bonus." *Id.* at 688 n.5. It also does not comport with this Court's recent decision in *Hebert v. FMC Techs., Inc.* that §604(b)'s reasonable relationship requirement does not apply where, as here, employees receive a guaranteed salary plus additional compensation. *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427, at *2 & n.3 (5th Cir. June 21, 2023).

Plaintiffs and the DOL also implore the Court to shun HR-IT's argument that the salary basis test (or, at least, the reasonable relationship requirement) is an invalid exercise of DOL's authority to "define[] and delimit[]" the White-Collar exemptions. But this issue of law—about which multiple Supreme Court justices and judges of this Court have expressed deep concern—should be taken up now to avoid the miscarriage of justice that would occur if Plaintiffs—despite undisputedly performing the requisite White-Collar job duties and earning well over the DOL's "screening" salary threshold—are found non-exempt solely because of the way they were paid. On the merits, neither Plaintiffs nor the DOL provide any legitimate explanation for how an employee's receipt of additional pay on top of their weekly guaranteed amount that already exceeds DOL's screening threshold could have any bearing on whether that employee is employed in a "bona fide executive, administrative, or professional capacity." Therefore, the current salary basis test does not pass statutory muster and must be invalidated.

Finally, even if this Court affirms the district court's decision that Plaintiffs were not paid on a salary basis, the Court should find that HR-IT established its good faith defense or, at least, require the district court to consider HR-IT's evidence of good faith on remand.

## **ARGUMENT**

## I.    **PLAINTIFFS' COMPENSATION SATISFIED §602(A)'S SALARY BASIS TEST.**

A.    *Hewitt* Confirms §602(a)'s Salary Basis Test is Satisfied When an Employee Received Compensation In Addition to a Guaranteed Salary.

Plaintiff's sole argument that they were not paid on a salary basis is because they were compensated additional hourly pay on top of their weekly guaranteed salaries, HR-IT was required to satisfy §604(b)'s reasonable relationship test. (Gentry Br. at 8–31; DOL Br. at 12-24). *Hewitt* and §602(a) expressly foreclose this argument: "§ 602(a)'s 'all or part' reference … makes clear that a worker can be paid on a salary basis **even if he additionally gets non-salary compensation**…" *Hewitt*, 143 S. Ct. at 688 n.5 (emphasis added)(citing 29 C.F.R. § 541.602(a) (salary basis means "employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all **or part of** the employee's compensation.") (emphasis added)).

Plaintiffs ignore *Hewitt's* unambiguous affirmation that hybrid compensation schemes, like HR-IT's, may satisfy §602(a) by cherry-picking a

3

phrase used just once in *Hewitt*—"weekly-rate-only"—completely out of context to argue that §602(a)'s salary basis test "is 'limited to weekly-rate employees'(i.e., those paid a "weekly-rate-only"). (Gentry Br. at 23). But, when placed back into its context, it is clear the Supreme Court's use of the phrase "weekly-rate-only" does not refer to whether an employee receives extra compensation in addition to their base salary; rather, it refers to what constitutes such a <u>base</u> salary in the first place:

> First, even without support from § 604(b), **the plain text of § 602(a) excludes daily-rate workers like Hewitt**…. And Helix of course acknowledges that it must comply with § 602(a) to satisfy the HCE rule's salary-basis requirement. Second, even on Helix's view of the HCE rule, § 604(b) in fact confirms the **plain-text, weekly-rate-only reading of § 602(a)**.

*Id*. at 689 (internal citations omitted, emphasis added). Not only does Plaintiffs' position misread *Hewitt* completely out of context, it also ignores the plain language of §602(a) that confirms only "**part**"—not all—of an employee's compensation need be paid on a guaranteed weekly basis to satisfy its salary basis test.

In accordance with the plain language of *Hewitt* and §602(a), this Court recently rejected this exact argument that §602(a)'s salary basis test cannot be satisfied where an employee received compensation in addition to a guaranteed bi-weekly salary. *See Hebert*, 2023 WL 4105427. In *Hebert*, the plaintiffs were paid a biweekly salary that did not change based on the days or hours worked plus an

additional "'field service premium'[3]…for days spent working at an offshore site." *Id.* at **1, n.5. This Court found that because plaintiff "received a bi-weekly salary without regard to the number of hours or days he worked," he "plainly satisfie[d] the definition of 'salary basis' in § 541.602(a)." *Id.* at *2. The Court also flatly rejected plaintiff's claim that because he as paid an additional day-rate bonus, he was not paid in accordance with §602(a)'s salary basis test: "The regulations foreclose that assertion. **Hebert does not lose his status as an employee paid on a salary basis just because he is also paid a bonus on top of the salary that the record has established was guaranteed to him.**" *Id.* (citing 29 C.F.R. 541.604(a)) (emphasis added). Because Hebert was paid a guaranteed bi-weekly salary in accordance with §602(a), the court found §604(b) inapplicable. *Id.* at *2, n.5.

As in *Hebert*, the undisputed record establishes that Plaintiffs were paid a weekly guaranteed salary that did not change based on days or hours worked plus an additional hourly premium. (HR-IT Br. at 16–20). Thus, just like in *Hebert*, Plaintiffs received a salary that "plainly satisfies" 541.602(a). And, like in *Hebert*, there is no dispute that Plaintiffs' weekly salaries would otherwise satisfy §602(a)'s salary basis test. (ROA.1263; Gentry Br. at 3-4, 15; DOL Br. at 10). Accordingly, like in *Hebert*, this Court should find that because Plaintiffs were paid a guaranteed weekly salary, §602(a)'s salary basis test was satisfied and

---

[3] The additional "field service premium" was calculated on a day-rate basis. *Id.*

§604(b)'s reasonable relationship requirement is inapplicable. *See also Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 292 n.2, 297 (5th Cir. 2021) (*en banc*) (courts "ignore § 541.604(b)" when plaintiffs are "undisputedly guaranteed weekly base salaries" (quoting *Hughes v. Gulf Interstate Field Servs. Inc.*, 878 F.3d 183, 189 (6th Cir. 2017)); *Willis v. Koning Assocs.*, No. 21-CV-00819-BLF, 2023 WL 3569998, at *4 (N.D. Cal. May 19, 2023) (541.604(a), not 541.604(b), applied to a "guaranteed monthly base salary" plus additional hourly pay).[4]

Other than the district court's decision here, Plaintiffs can only muster up one decision to support its interpretation: *Vaughn v. Wingo*.[5] (Gentry Br. at 29-31). But there "both parties agree[d] that Plaintiff was paid on an hourly basis," and defendant merely contended that plaintiff was "given a 'guaranteed 40 [hours of work] if that's what he wanted.'" *Vaughn*, 2022 WL 4280665, at *3. Thus, *Vaughn* is wholly distinguishable from the undisputed facts here, where Plaintiffs were guaranteed, in writing, a <u>weekly</u> salary that was paid regardless of the number of hours they worked each week.

---

[4] *See also* HR-IT Br. at 33–36 (collecting cases finding 541.604(b) does not apply to hybrid pay structures). Although Plaintiffs dismiss these cases as "outliers," (Gentry Br. at 38–39), *Hebert* confirms that these cases correctly interpreted the salary basis regulations.
[5] *Vaughn v. Wingo Serv. Co., Inc.*, No. 4:20-CV-3915, 2022 WL 4280665 (S.D. Tex. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 4277299 (S.D. Tex. Sept. 15, 2022).

Plaintiffs also incorrectly claim that their interpretation "harmonizes with" the First and Second Circuit's decisions in *Litz* and *Anani*.[6] (Gentry Br. at 25-26). Specifically, Plaintiffs incorrectly claim §604(b) did not apply in *Litz* because the additional compensation paid was in the form of "commissions," yet that word does not appear in *Litz*. Rather, the "paystubs show[ed] hours times hourly rate," like here, thus *Litz* held §602(a) was met since plaintiffs received an "undisputed guarantee" over $455. *Litz*, 772 F.3d at 5. Equally unavailing is Plaintiffs contention that the *Anani* court did not apply §604(b) because the employee's base salary was based on 44 hours. But *Anani* did not rely on this fact; rather, the court held §602(a) was satisfied since the "base weekly salary was guaranteed, *i.e.* to be paid regardless of the number of hours appellant actually worked in a given forty-four-hour shift." *Anani*, 730 F.3d at 148. In fact, Anani's additional pay for "additional hours worked," which "usually ranged from 16 to 36 hours per week," often well exceeded the DOL's 1.5-to-1 ratio for the reasonable relationship test, yet the court found this fact irrelevant. *Id.* at 147–48.

In a further effort to avoid the application of §602(a), Plaintiffs mischaracterize their guaranteed salaries as just a payment for 8 hours of work, *i.e.* pay for a "a single day" and, therefore, "functionally the same as that posed in *Helix*." (Gentry Br. at 12 n.6, 15). But, contrary to Plaintiffs' claim that eight hours

---

[6] *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014); *Anani v. CVS RX Services, Inc.*, 730 F.3d 146 (2d Cir. 2013).

equaled one day's work, Plaintiffs worked anywhere from one to twelve hours on any given day. (ROA.338, 689). More importantly, the undisputed record evidence demonstrates that Plaintiffs' salaries were promised to them in writing as a "guaranteed weekly salary," which they were entitled to (and did) receive every week they performed any work for HR-IT, regardless of hours (or days or shifts) worked. (HR-IT Br. at 23-25). In fact, Taylor received his full $1,200 salary in multiple weeks when he worked less than eight hours. (ROA.316, 362, 676, 689-696). Thus, this predetermined, guaranteed amount paid to Plaintiffs on a weekly basis, constituting part of their compensation fits precisely within §602(a)'s definition of a weekly salary.

Plaintiffs' argument that HR-IT's interpretation would render §604(b) "mere surplusage" also has no basis in the plain language of the regulations or applicable precedent. (Gentry Br. at 13). *Hewitt* identifies at least one situation where § 604(b) applies—when an employee is paid a pure day rate. *Hewitt*, 143 S. Ct. at 685. Moreover, § 604(b) expressly limits the where its reasonable relationship test may apply to "***only if*** the employee's pay is computed on an hourly, daily or shift basis." 29 C.F.R. 541.604(b) (emphasis added). Under HR-IT's interpretation of §604(b), on the other hand, the reasonable relationship test is not surplusage, but is utilized only in those specific situations expressly permitted by §604(b)'s plain

8

language, while Plaintiffs' (and the DOL's) interpretation would render §602(a)'s "all or part" provision "mere surplusage."

There is no dispute that the Supreme Court in *Hewitt* unambiguously confirmed that "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt." *Hewitt*, 143 S. Ct. at 685 n.3; *see also id.* at 685 ("§ 602(a) and § 604(b) are independent routes for satisfying the HCE rule's salary-basis component."). And all applicable regulations and precedent expressly confirm §602(a)'s salary basis test is met where, like here, an employee receives "each pay period on a weekly, or less frequent basis, a predetermined amount," even when the employee gets additional compensation calculated on a non-salary basis. *Id*. at 688 n.5; *Hebert*, 2023 WL 4105427 at *2. There is simply no basis for Plaintiffs' claim that they were not paid on a salary basis simply because they were paid additional compensation. Because that HR-IT's payment of a weekly guaranteed salary to Plaintiffs complied with §602(a), HR-IT need not also satisfy §604(b)'s reasonable relationship test and no further analysis is needed.

B.    PLAINTIFFS' EXTRA HOURLY PAY FELL UNDER §604(A), NOT §604(B).

As HR-IT explained in its Opening Brief, its interpretation of the salary basis test is not only supported by the express language in §602(a) and *Hewitt*, but also by §604(a). (HR-IT Br. at 26-32). In response, Plaintiffs and the DOL

incorrectly claim that §604(a) permits additional pay "only for hours 'beyond the normal workweek.'" (DOL Br. at 15-19; Gentry Br. at 13-21). As an initial matter, the *Hebert* decision annihilates this argument, since the day rates there were paid for any "days spent working at an offshore site," not just for days or hours "beyond the normal workweek." *Hebert*, 2023 WL 4105427, at **1–2. Moreover, this argument discounts the DOL's own statements in 2019 and 2020 Opinion Letters confirming that payments of any nature are permitted where, as here, employees receive a weekly base salary over DOL's threshold. (*See* HR-IT Br. at 29-30).

HR-IT's interpretation of §604(a) comports with the plain text of the regulation which explicitly provides "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement…so long as the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Notably, the last sentence of §604(b) provides that the additional compensation "may be paid **on any basis** (e.g., flat sum, bonus payment, **straight-time hourly amount**, time and one-half, or any other basis)…" *Id.* Neither Plaintiffs nor the DOL explain how HR-IT's pay structure does not fall squarely within 541.604(a).[7]

---

[7] The DOL's complete disregard of the first and last sentences of §604(a) defeat its position that the Court should defer to its interpretation of the regulation. *See Bowen v. Georgetown Univ.*

Even if §604(a) only applied to payments for hours beyond the "normal workweek," there is no basis for construing normal workweek as forty hours. When DOL wanted to refer to forty hours, it did so expressly. *E.g.*, 29 C.F.R. § 778.101. And, the FLSA contains numerous other weekly hours thresholds. *E.g.*, 29 U.S.C. § 207(b)(3) (56-hour workweek for certain petroleum distributors); *id.* § 207(m) (48-hour workweek for certain tobacco industry employees). Thus, the most reasonable interpretation of "normal workweek" in §604(a) is the one proposed by HR-IT: the time period for which the parties intended the employee's weekly guaranteed salary to cover. (HR-IT Br. at 29–30).

Finally, the inapplicability of §604(b) is supported by the use of the term "normal scheduled workweek." "Normal" means "[a]ccording to a regular pattern." *Normal*, Black's Law Dictionary (11th ed. 2019). "Schedule[d]" means "to appoint, assign, or designate for a fixed time." *Schedule*, Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/schedule (last accessed July 5, 2023). And "workweek" means "a fixed and regularly recurring period of 168 hours—seven consecutive 24-hour periods." 29 C.F.R. § 778.105. Thus, the plain language of §604(b) contemplates employees who work a fixed, regular amount of time each week and whose total pay is computed on an hourly, daily, or shift basis, such that their "usual" earnings can be determined and their salary be set

---

*Hosp.,* 488 U.S. 204, 212 (1988) (courts do not afford deference to "agency litigating positions that are wholly unsupported by [the] regulations").

11

to "roughly equivalent" of the same. It does <u>not</u> apply where, as here, Plaintiffs' average hours fluctuated from 2 to 59 hours a week.[8] For example, Taylor averaged 51.3 hours per week between February 18 and May 26, 2019, but only 10.7 hours per week between September 14 and December 20, 2020[9]—showing he had no "normal scheduled workweek."[10] Plaintiffs provide <u>no</u> explanation how HR-IT could have ensured Plaintiffs' weekly salaries were "roughly equivalent to the employee's usual earnings" when their hours fluctuated so significantly that they had no "normal scheduled workweek." This further demonstrates the absurdity (and indeed the impracticability) of applying §604(b) here. *See Gregory v. Missouri Pac. R. Co.*, 32 F.3d 160, 165 (5th Cir. 1994) ("in construing a statute or regulation, [courts] seek to avoid imposing [absurd or illogical] results").

## II. THE SALARY BASIS TEST IS INVALID

Plaintiffs and the DOL provide scant defense of the salary basis test, ignoring recent skepticism of Fifth Circuit judges and Supreme Court justices as to its continued validity. Indeed, Plaintiffs do not even <u>attempt</u> to champion the validity of reasonable relationship test, and the DOL relegates its defense of this

---

[8] ROA.574, 692; *see generally* ROA.391–473, 492–672.

[9] ROA.568–582, 656–670.

[10] Plaintiffs' reliance on the DOL's example of a nurse paid "$30 per hour, who would earn the guaranteed minimum [then $455] in two shifts" is misplaced. *See* 69 Fed. Reg. 22122, 22184 (April 23, 2004) ("DOL's 2004 Rule"). That example clearly contemplates a "guarantee[d]" number of shifts, <u>not</u> a weekly predetermined salary: "the nurse might not receive <u>more than the two shifts required</u> to earn the minimum guarantee." *Id.* Here, Plaintiffs received their weekly guaranteed salary regardless how much they worked, so their salaries were not "computed" on an hourly basis.

provision to <u>two sentences</u>. (DOL Br. at 29; Gentry Br. at 31-41). Thus, the Court can—and should—invalidate the salary basis test or, at least, §604(b).

A.   THIS COURT SHOULD CONSIDER THE VALIDITY OF THE SALARY BASIS TEST.

Plaintiffs concede "[w]hen an appellate court should consider an issue not properly presented is a question with no certain answer." *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008). Thus, although Plaintiffs and the DOL contend that showing a "miscarriage of justice" is always required, precedent shows otherwise. *E.g.*, *Glass v. Paxton*, 900 F.3d 233, 243 (5th Cir. 2018) (no "general rule as to how appellate courts should exercise their discretion" and "circumstances in which a federal appellate court is justified in resolving an issue not passed on below" include "where the proper resolution is beyond any doubt ... **or** where injustice might otherwise result" (emphasis added, quotations omitted)); *Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir. 1986) ("An issue raised for the first time on appeal generally is not considered unless it involves a purely legal question or failure to consider it would result in a miscarriage of justice.").

13

Even if showing a "miscarriage of justice" were required,[11] HR-IT demonstrated just that with the following consequences if the district court's decision is affirmed but the salary basis test's validity is not examined:

- Plaintiffs would be unjustly deemed non-exempt due solely to how they were paid (HR-IT Br. at 38);[12]

- The "flood of targeted plaintiffs lawsuits" threatening whole industries that have resulted from "interpretations of the word 'salary'" under the DOL regulations will surely continue, and likely intensify. (HR-IT Br. at 41–42);[13] and

- The salary basis test would inexplicably punish employers who provide employees with pay on top of their salary that already exceeds the DOL's "screening" threshold. (HR-IT Br. at 45–47).

More specifically, failure to take up this issue would—if the Court affirms the district court—result in HR-IT being improperly held liable for $95,559 in damages plus up to over $197,354.33 in attorneys' fees and costs. (ROA.1273, 1347). That is the very definition of a miscarriage of justice. *See*, *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009) (finding a miscarriage of justice where "failure to reach the issue would result in significant actual harm … liability for approximately $206,544.52 in unjustified attorney's fees").

---

[11] The DOL wags its finger at HR-IT for not using the exact words "miscarriage of justice," (DOL Br. at 26), but there is no requirement that "an appellant invoke the[se] magic words." *Bernal v. Bexar County*, 757 F. App'x 316, 319 (5th Cir. 2018).

[12] *See Hewitt*, 15 F.4th at 319 (Wiener, J., dissenting) ("the original proponents of the FLSA…are turning over in their respective graves" due to the salary basis test excluding White-Collar employees from exempt status).

[13] *See Id.* at 317 n. 25 (Jones, J., dissenting) (explaining how the Court's interpretation of the salary basis test has "implications beyond the [employees] at issue in this case").

14

Plaintiffs claim there is no "miscarriage of justice" because the Supreme Court did not take up this issue in *Hewitt*. (Gentry Br. at 34). But in *Hewitt*, Helix did not first raise the issue until oral argument before the Supreme Court. *Hewitt*, 143 S. Ct. at 685 n.2. Thus, unlike here, the parties did not have the opportunity to brief the issue in any court. If anything, the Supreme Court's failure to address this issue makes it even more vital that this Court address it now. Proper interpretation of §604(b) has been in flux for several years. Now that the Supreme Court has found that DOL's salary basis test results—at least on the facts of *Hewitt*—in exempt status turning solely on "how an employee is paid,"[14] its validity must be examined. *See Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) (rejecting "longstanding agency interpretation[]" where court's "analysis in [prior case] ma[de] apparent, however, this [regulatory] approach … cannot be squared with the plain language of the statute"). And this case presents the issue in pure form since there is no dispute that Plaintiffs met the other White-Collar exemption requirements.

Finally, although the DOL contends that this Court should not take up this issue because there is a district court case challenging the salary <u>level</u> requirement, that case provides no basis for the Court declining to address the separate arguments here regarding the salary <u>basis</u> test. (DOL Br. at 26 (discussing *Mayfield*

---

[14] *Hewitt* 143 S. Ct. at 695 (Kavanaugh, J., dissenting).

15

*v. U.S. Department of Labor*, No. 1:22-cv-792-RP (W.D. Tex.)).[15] Thus, HR-IT

has provided ample reasons for taking up this issue for the first time on appeal.

(*See also* HR-IT Br. at 37–48).

    B.    THE "SALARY BASIS" REQUIREMENTS EXCEED THE DOL'S AUTHORITY
             TO DEFINE AND DELIMIT THE WHITE-COLLAR EXEMPTIONS.

Plaintiffs' (and the DOL's) arguments on the merits fare no better. Initially,

although Plaintiffs rely on *Chevron*,[16] the DOL does <u>not</u>. (Gentry Br. at 40–41;

DOL Br. at 27–29). Thus, "*Chevron* does not apply for the simple reason that the

Government does not ask [this Court] to apply it." *Cargill v. Garland*, 57 F.4th

447, 465 (5th Cir. 2023), *petition for certiorari filed* (U.S. April 7, 2023).

Even if *Chevron* applied, it "is not a standard of review," but rather "a legal

argument that the Government can make to contend that its interpretation satisfies

the relevant standard of review" set forth in the Administrative Procedure Act:

"arbitrary and capricious, abuse of discretion, in excess of statutory authority, and

so on." *Cargill*, 57 F.4th at 466 (citing 5 U.S.C. § 706). Thus, even under *Chevron*,

the Court must first ask "whether Congress has directly spoken to the precise

question at issue" by "exhaust[ing] all the 'traditional tools' of construction,"

including "text, structure, history, and purpose." *Gulf Fishermens Ass'n v. Nat'l*

---

[15] Moreover, while the Government contends that it would be entitled to full briefing in that case since it is a party, it has also sought to do so here. (DOL Br. at 27). HR-IT does not object to the DOL's request but respectfully requests an opportunity file a supplemental response thereto.

[16] *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The Supreme Court has granted *certiorari* on whether *Chevron* should be overturned. *Loper Bright Enters., Inc. v. Raimondo*, 45 F.4th 359 (D.C. Cir. 2022), *cert. granted*, 2023 WL 3158352 (2023).

*Marine Fisheries Serv.*, 968 F.3d 454, 460 (5th Cir. 2020), *as revised* (Aug. 4, 2020). And, even if a statute is "truly ambiguous," "an agency interpretation can fail *Chevron* step two if it is contrary to clear congressional intent or frustrates the policy Congress sought to implement" or is "arbitrary, capricious, or manifestly contrary to the statute." *Sw. Elec. Power Co. v. United States Env't Prot. Agency*, 920 F.3d 999, 1028 (5th Cir. 2019).

1.  THE FLSA UNAMBIGUOUSLY REQUIRES THE WHITE-COLLAR EXEMPTIONS TURN ON JOB DUTIES, NOT PAY.

Here, the FLSA's "text, structure, history, and purpose" confirm that the White-Collar exemptions were <u>not</u> intended to turn on pay. "[E]mployee[s] employed in a bona fide executive, administrative, or professional capacity" are exempt. 29 U.S.C. § 213(a)(1). The terms "capacity" and "bona fide" have always been understood to refer to <u>job duties</u>, not pay. *Nevada v. United States Dep't of Lab.*, 275 F. Supp. 3d 795, 804–05 (E.D. Tex. 2017). Thus, "Section 213(a)(1) is unambiguous because the plain meanings of the words in the statute indicate Congress's intent for employees doing 'bona fide executive, administrative, or professional capacity" duties to be exempt from overtime pay.'" *Id.* at 805. Therefore, DOL does <u>not</u> have authority to promulgate rules that cause "salary [to] serve[] as a defining characteristic when determining who, in good faith, performs actual executive, administrative, or professional capacity duties." *Id.* at 806; *see*

17

*also Hewitt*, 15 F.4th at 314–16 (Jones, J., dissenting) (citing *Nevada* with approval).

The DOL's claim that the use of the terms "bona fide" and "capacity" somehow permit the White-Collar exemptions to turn on salary is belied by DOL's own previous explanation that "the statutory text … grounds an analysis of exemption status in the 'capacity' in which someone is employed—i.e., ***that employee's duties***." DOL, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230, 51281 (Sept. 27, 2019) (the "DOL's 2019 Rule") (emphasis added); *see also id.* at 51237 ("Salary is a helpful indicator of the capacity in which an employee is employed, especially among lower-paid employees," "[b]ut it is not 'capacity' in and of itself"); Harry Weiss, Report and Recommendations on Proposed Revisions of Regulations, Part 541, at 15 (1949) (explaining that the salary test "must serve as a guide to the classification of bona fide [White-Collar] employees and not as a barrier to their exemption"). Moreover, that Congress did not intend for the White-Collar exemptions to turn on pay is shown by the inclusion of pay requirements for other exemptions. (HR-IT Br. at 40–41).

Finally, that Congress did not intend the White-Collar requirements to turn on pay is consistent with the FLSA's purpose. The FLSA's "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement." *Encino*

18

*Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). Congress deemed it proper to exempt White-Collar employees from the "minimum wage and maximum hour requirements" of the FLSA. 29 U.S.C. § 213(a)(1). Although Plaintiffs argue that the salary test avoids an "absurd" result of White-Collar employees receiving subminimum wages (Gentry Br. at 44), the FLSA clearly exempts such employees from <u>both</u> the overtime <u>and</u> minimum wage requirements. 29 U.S.C. § 213(a); *see also Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 586 (5th Cir. 2013) (affirming summary judgment to employer as to exempt employee "who was paid on average $6.66 an hour" and therefore "was compensated meaningfully below the minimum wage," rejecting plaintiff's suggestion that "earning less than minimum wage is itself sufficient for relief"). There is nothing absurd about this result: several other FLSA exemptions contain no pay requirements and, therefore, permit subminimum wages. *E.g.*, *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 74 (2d Cir. 2015) (affirming dismissal of employee's claims againsta "seasonal amusement or recreational establishment…exempt from the FLSA's minimum wage requirements pursuant to 29 U.S.C. § 213(a)(3)").

Thus, the FLSA unambiguously provides that the White-Collar exemptions must turn on job duties, not pay. And since "the canons [of statutory interpretation]

supply an answer, '*Chevron* leaves the stage.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018).

### 2.   DOL'S INTERPRETATION OF THE WHITE-COLLAR EXEMPTIONS IS UNREASONABLE.

Even if Section 213(a) were ambiguous (it is not), the salary basis test is an unreasonable and arbitrary interpretation of the FLSA. While the earning a certain level of salary can be helpful for "*identifying* categories of employees Congress intended to be exempt," it cannot be used to "essentially make an employee's duties, functions, or tasks irrelevant." *Nevada*, 275 F. Supp. 3d at 806–07; *Hewitt*, 15 F.4th at 316 (Jones, J., dissenting) ("every salary test does not necessarily pass statutory muster"). Thus, the DOL's current salary basis test is "not 'based on a permissible construction' of Section 213(a)(1)." *Nevada*, 275 F. Supp. 3d at 807.

In fact, DOL has <u>excluded</u> salary basis requirements for public sector employees, motion picture industry employees, business owners, and doctors and lawyers. 29 C.F.R. §§ 541.101, 304, 709, 710; *see also* DOL, Exemptions From Minimum Wage and Overtime Compensation Requirements of the Fair Labor Standards Act; Public Sector Employers, 57 Fed. Reg. 37666, 37670 (Aug. 19, 1992) (emphasis added) ("certain aspects of the 'salary basis' test … are <u>not valid</u> <u>indicators</u> of the bona fides of a claimed exemption under section 13(a)(1) in the public sector"). That the DOL has inexplicably found the "salary basis" test to be a dispositive indicator of exempt status in certain sectors, but not others, shows this

test is arbitrary and divorced from the statute. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("[u]nexplained inconsistency in agency policy is a reason for holding an interpretation to be … arbitrary and capricious"); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005) ("[N]o deference is owed to an interpretation of the statute that makes arbitrary distinctions.").

Moreover, the FLSA's <u>silence</u> regarding pay requirements in 213(a) does not permit the DOL to exclude employees who undisputedly perform White-Collar job duties from exempt status based solely on the way they are paid, thereby disturbing the pay practices of entire industries. Such "[e]xtraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].'" *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022). Thus, even if "bona fide … capacity" could plausibly be read to encompass salary requirements, "something more than a merely plausible textual basis for the agency action is necessary" where, as here, the action makes a "radical or fundamental change" to the statutory scheme. *Id.*; *see also Gulf Fishermens Ass'n.*, 968 F.3d at 460 (rejecting agency's argument that "nothing-equals-something" for statutory authority); *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.").

21

Plaintiffs' contention that Congress ratified the salary basis test is simply not true. Congress merely stated in 1949 that then-existing DOL regulations would "remain in effect;" and expressly <u>excepted</u> any "regulation … [that] may be inconsistent with the provisions of this Act." 93 Stat. 920; *see United States v. Smith*, 39 F.2d 851, 857 (1st Cir. 1930) (rejecting argument that agency regulations "have been ratified by Congress" where Congress "refus[ed] to adopt a provision declaring the regulations to be valid"); *Bio-Med. Applications of Aquadilla, Inc. v. United States*, 119 Fed. Cl. 546, 559 (2014) (explaining that "[t]he standard to establish congressional ratification of unauthorized agency action is not easy to meet" and requires that "the statute 'must plainly show a purpose to bestow the precise authority which is claimed'"). Likewise, Plaintiffs claim that the Fifth Circuit (*Wirtz*[17]) and Supreme Court (*Auer*[18]) upheld the salary basis test also has no basis in law. (HR-IT's Br. at 44–45). Similarly, the fact that some version of a salary test has been in place for many years is no justification, since "[e]ven contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Betts*, 492 U.S. at 171.

Finally, Plaintiffs incorrectly argue that if the "salary basis test goes down, the HCE rule necessarily goes down with it." This position ignores *Hewitt*'s clarification that the HCE rule "amends only the duties test" such that "the duties

---

[17] *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966).
[18] *Auer v. Robbins*, 519 U.S. 452 (1997).

test becomes easier to satisfy." *Hewitt*, 143 S. Ct. at 683. This makes perfect sense and still aligns with the plain language of the HCE exemption: the higher an employee's pay, the more likely they are to be employed in a bona fide in a White-Collar capacity. *See* 29 C.F.R. § 541.601(c).

C.    <u>THE REASONABLE RELATIONSHIP TEST IS EVEN MORE DIVORCED FROM THE FLSA'S TEXT AND, THEREFORE, INVALID.</u>

The DOL's only argument for the reasonable relationship test's validity is that it ensures that an hourly paid worker is "paid a weekly guarantee that functions like a true salary." But the DOL utterly fails to tie that argument to the statutory text. Indeed, the DOL's own stated purpose for "the salary tests" is to "prevent[] the misclassification by employers of obviously nonexempt employees, thus tending to reduce litigation" and "simplif[ying] enforcement by providing a ready method of screening out the obviously nonexempt employees." DOL's 2019 Rule, 84 Fed. Reg. at 51237. The DOL claims that this screening purpose applies only the salary <u>level</u> test, not the salary <u>basis</u> test. But the above language refers broadly to the salary tests. Moreover, salary basis is a "predetermined and fixed" amount, and salary level is "a minimum specified amount" that "the amount of salary paid must meet," so salary basis is simply the <u>method</u> of determining whether the employee receives a weekly guarantee over the minimum salary level threshold. DOL's 2019 Rule, 84 Fed. Reg. at 51230. Thus, the screening purpose obviously relates to both the salary basis and salary level tests.

Moreover, Plaintiffs' arguments regarding the general salary basis test have no application to the reasonable relationship test. The Fifth Circuit's 1966 *Wirtz* decision, the Supreme Court's 1997 *Auer* decision, and the alleged "ratification" of the DOL's regulations in 1949, all pre-dated DOL's 2004 reasonable relationship test. DOL's 2004 Rule, 69 Fed. Reg. at 22183.

Here, as discussed above, it is undisputed that if Plaintiffs only received their weekly salaries, they would be exempt. Those weekly salaries provide stable and predictable pay well over the DOL's screening threshold, so that is all that should be required to show that their compensation indicates they work in a "bona fide [White-Collar] capacity." If anything, payments above the salary should indicate that an employee is more likely in a bona fide White-Collar role. *See* 29 C.F.R. § 541.601(c). Yet, if §604(b) applies, Plaintiffs would be deemed non-exempt solely because they received hourly pay on top of their weekly salaries. This is an absurd and unreasonable interpretation of Congress's intent to exclude White-Collar employees from the FLSA.

## III.  THE DISTRICT COURT SHOULD BE DIRECTED TO EXAMINE HR-IT'S GOOD FAITH EVIDENCE.

Plaintiffs argue that the district court did not abuse its discretion in refusing to consider HR-IT's evidence of good faith presented in its Objections to the Magistrate Judge's Memorandum and Recommendation because HR-IT did not provide an explanation not introducing this evidence in its Motion for Summary

Judgment.[19] This Court has explained that in exercising its discretion to review new evidence on objections to a magistrate judge's recommendation, a district court should "strike the proper balance between the[] competing interests" of "the need to bring litigation to an end and the need to render just decisions on the basis of all the facts," considering—among other things—"the reasons for the moving party's default" and the importance of the omitted evidence to the moving party's case." *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852–53 (5th Cir. 1998). The district court's Order is devoid of any such "balanc[ing]" of these interests and merely stated in conclusory fashion that the evidence is "not properly before the Court." (ROA.1329). The district court's failure to explain its decision constitutes an abuse of discretion. *E.g.*, *CEATS, Inc. v. TicketNetwork, Inc.*, No. 21-40705, 2023 WL 4056493, at *7 (5th Cir. June 19, 2023) ("district court abused its discretion by failing to explain the rates that it approved"); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015) ("district court's failure to provide an explanation of its denial of LRNA's motion clearly exceeded the bounds of judicial discretion").

Moreover, although Plaintiffs contend that *Davis v. Fernandez*, 798 F.3d 290 (5th Cir. 2015) is distinguishable, several of the factors considered there are

---

[19] Plaintiffs do not dispute that HR-IT's additional evidence as sufficient to support its good faith defense (HR-IT Br. at 48-49), and thus waive such argument. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, n.9 (5th Cir. 1995) ("failure to provide any legal or factual analysis of an issue results in waiver").

directly applicable here. First, like in *Davis* Plaintiffs cannot "claim … unfair surprise" as to HR-IT's testimony since their counsel is also counsel in *Pickens*. *Id.* at 294. Second, the evidence was important, since otherwise the party would "be left speechless" as to the claim at issue. *Id*. HR-IT had evidence that the Magistrate Judge specifically noted may have altered the outcome. (ROA.1270, 1302–04). Finally, HR-IT had good reason for not presenting this evidence to the Magistrate Judge: its advice of counsel was subject to attorney-client privilege until such privilege was waived in *Pickens*, and HR-IT believed that the evidence it originally presented was sufficient to establish good faith without waiving such privilege. (ROA.1299–1301, 1316). Thus, even if the Court affirms the district court's finding that Plaintiffs were not paid on a salary basis, the Court should find that liquidated damages were not warranted or, at least, require the district court to consider HR-IT's additional evidence on remand.

## CONCLUSION

For the foregoing reasons and the reasons set forth in HR-IT's Brief, HR-IT respectfully requests that this Court hold that Plaintiffs were properly classified as exempt under the FLSA, reverse the district court's denial of its motion for summary judgment, and dismiss Plaintiffs' claims with prejudice.

**Dated:  July 10, 2023**                    Respectfully submitted,

                                   By:  */s/ Ashlee Cassman Grant*

                                   **Ashlee Cassman Grant**
                                   Texas Bar No. 24082791
                                   Federal ID No. 1607786
                                   **Paul M. Knettel**
                                   Texas Bar No. 24102031
                                   Federal ID No. 3005240
                                   **BAKER & HOSTETLER LLP**
                                   811 Main Street, Suite 1100
                                   Houston, Texas  77002
                                   Telephone:  (713) 751-1600
                                   Facsimile:  (713) 751-1717
                                   agrant@bakerlaw.com
                                   pknettel@bakerlaw.com

                                   ATTORNEYS  FOR  DEFENDANT –
                                   APPELLANT    HAMILTON-RYKER
                                   IT SOLUTIONS, LLC

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 10, 2023, a copy of the foregoing Brief was filed electronically. Notice of this filing will be sent by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's system.

*/s/ Ashlee Cassman Grant*
Ashlee Cassman Grant

## **CERTIFICATE OF COMPLIANCE**

I certify that this Brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this brief contains 6462 words, as determined by the word count function of Microsoft Word. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman typeface.

*/s/ Ashlee Cassman Grant*
Ashlee Cassman Grant

Counsel for Defendant-Appellant
Hamilton-Ryker IT Solutions, LLC

Dated: July 10, 2023